## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERIC SABATINI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| CENTRAL EUROPEAN MEDIA ENTERPRISES LTD., JOHN K. BILLOCK, ALFRED W. LANGER, PARM SANDHU, KELLI TURNER, PETER KNAG, and TREY TURNER, | ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on October 27, 2019 (the "Proposed Transaction"), pursuant to which Central European Media Enterprises Ltd. ("Central European Media" or the "Company") will be acquired by affiliates of PPF Group N.V.

2.     On October 27, 2019, Central European Media's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with TV Bidco B.V. ("Parent") and TV Bermuda Ltd. ("Merger Sub," and together with Parent, "TV").  Pursuant to the terms of the Merger Agreement, Central European Media's stockholders will receive $4.58 in cash for each share of Central European Media common stock they own.

3.      On January 10, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for February 27, 2020.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Central European Media common stock.

9.      Defendant Central European Media is a Bermuda company and a party to the Merger Agreement.  Central European Media's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "CETV."

10.      Defendant John K. Billock is Non-Executive Chairman of the Board of the Company.

11.      Defendant Alfred W. Langer is a director of the Company.

12.      Defendant Parm Sandhu is a director of the Company.

13.      Defendant Kelli Turner is a director of the Company.

14.      Defendant Peter Knag is a director of the Company.

15.      Defendant Trey Turner is a director of the Company.

16.      The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

17.      Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Central European Media (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

18.      This action is properly maintainable as a class action.

19.      The Class is so numerous that joinder of all members is impracticable.  As of October 25, 2019, there were approximately 253,607,026 shares of Central European Media Class A common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

20.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

21.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

22.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

23.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

24.     Central European Media is a media and entertainment company operating leading businesses in five Central and Eastern European markets with an aggregate population of approximately 45 million people.

25.     The Company's operations broadcast thirty television channels in Bulgaria (bTV, bTV Cinema, bTV Action, bTV Lady, and Ring), the Czech Republic (Nova, Nova 2, Nova

Cinema, Nova Sport 1, Nova Sport 2, Nova International, Nova Action, and Nova Gold), Romania (PRO TV, PRO 2, PRO X, PRO GOLD, PRO CINEMA, PRO TV International, and PRO TV Chisinau), the Slovak Republic (TV Markíza, Markíza International, Doma, and Dajito), and Slovenia (POP TV, Kanal A, Brio, Oto, and Kino).

26.     On October 27, 2019, Central European Media's Board caused the Company to enter into the Merger Agreement.

27.     Pursuant to the terms of the Merger Agreement, Central European Media's stockholders will receive $4.58 in cash for each share of Central European Media common stock they own.

28.     According to the press release announcing the Proposed Transaction:

Central European Media Enterprises Ltd. ("CME" or the "Company") (NASDAQ/Prague Stock Exchange: CETV) today announced that it has entered into a definitive agreement to be acquired by an affiliate of PPF Group N.V. ("PPF Group") in a cash transaction valued at approximately US$ 2.1 billion.

Under the terms of the agreement, holders of all of CME's issued and outstanding Class A common shares will receive US$ 4.58 per share. This valuation represents a premium of approximately 32% to CME's share price prior to the announcement on March 25, 2019 that the Company was commencing a process to explore and evaluate potential strategic alternatives. . . .

The agreement has been approved unanimously by CME's Board of Directors, upon the recommendation of the Special Committee of the Board. CME's largest shareholder, AT&T Inc., has agreed to vote in favor of the transaction. The acquisition is expected to be completed around the middle of 2020, subject to the receipt of regulatory approvals and the satisfaction of customary closing conditions. The consummation of the transaction is not subject to any financing contingencies.

The Company is being advised by Allen & Company LLC and Bank of America Merrill Lynch as its financial advisors, and Covington & Burling LLP as its legal advisor.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

29.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for February 27, 2020.

30.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

31.     First, the Proxy Statement omits material information regarding the Company's financial projections.

32.     The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) OIBDA and (b) Unlevered Free Cash Flow; (ii) projected net income; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

33.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

34.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Allen & Company LLC ("Allen").

35.     With respect to Allen's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Allen in the analysis.

36.     With respect to Allen's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by

Allen in the analysis.

37.     With respect to Allen's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate the standalone unlevered, after-tax free cash flows that the Company was forecasted to generate during the three months ending December 31, 2019 through the full fiscal year ending December 31, 2028; (ii) the terminal values for the Company; (iii) Allen's basis for applying a selected range of terminal value OIBDA multiples of 6.5x to 8.5x; and (iv) the individual inputs and assumptions underlying the discount rate range of 8.25% to 9.25%.

38.     With respect to Allen's analysis of price targets, the Proxy Statement fails to disclose: (i) the price targets observed by Allen in the analysis; and (ii) the sources thereof.

39.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40.     Third, the Proxy Statement omits material information regarding the engagement of the Company's additional financial advisor, Bank of America Merrill Lynch ("BofA")

41.     The Proxy Statement fails to disclose the amount of compensation BofA will receive in connection with its engagement, as well as the amount of BofA's compensation that is contingent upon consummation of the Proposed Transaction.

42.     The Proxy Statement also fails to disclose whether BofA has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received or to be received by BofA for providing such services.

43.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44.     Fourth, the Proxy Statement fails to disclose whether the Company entered into any nondisclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from requesting submitting offers to acquire the Company.

45.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

46.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Special Committee and the Board of Directors and Reasons for the Merger; (iii) Fairness Opinion of Allen & Company; and (iv) CME's Unaudited Financial Projections.

47.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Central European Media**

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary

to make the statements therein not materially false or misleading. Central European Media is liable as the issuer of these statements.

50.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

51.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

53.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

54.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Central European Media within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions

as officers and/or directors of Central European Media and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

60.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 21, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*